IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Marvin B. Dinsmore, *et al.*, on behalf of themselves, and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>Phillips 66 Company,<br><br>        Defendant. | Case No. 22-CV-44-JFH |

**CLASS REPRESENTATIVES' MOTION FOR FINAL APPROVAL
OF CLASS ACTION SETTLEMENT & BRIEF IN SUPPORT**

  Class Representatives Marvin B. Dinsmore and Sheridan Downey, III, as Administrators of the Estate of David D. Dinsmore and the Estate of Margaret D. Dinsmore ("Class Representatives" or "Plaintiffs"), move the Court for final approval of the:

1. Proposed class action Settlement;
2. Notice of Settlement and Plan of Notice; and
3. Proposed Initial Plan of Allocation.

Class Representatives' proposed Judgment is attached as **Exhibit 1**, and Class Representatives' Proposed Initial Plan of Allocation Order is attached as **Exhibit 2**.[1] With no objections filed to date and with only ten of the thousands of potential class members purporting to opt-out as of this filing, Class Representatives submit that the Settlement is fair, reasonable, and adequate and should be finally approved. **Ex. 3**, Declaration of Class Representatives ("Class Reps. Decl.").[2]

---

[1] The proposed judgment was attached as Exhibit 2 to the Settlement Agreement ("SA"), Doc. 26-1. Class Counsel will also submit native versions of the proposed orders to the Court in advance of the Final Fairness Hearing and after the opt-out and objection deadlines (August 24, 2023) have passed.

[2] Capitalized terms not otherwise defined shall have the meaning ascribed to them in the SA.

## BACKGROUND

In the interest of brevity, Class Representatives will not recite the entire background of this Litigation. Rather, Class Representatives refer the Court to the Motion for Preliminary Approval (Doc. 26), the Joint Declaration of Class Counsel ("Joint Counsel Decl.") (**Exhibit 4**), the pleadings on file, and any other matters of which the Court may take judicial notice, all of which are incorporated as if fully set out in this memorandum.

On June 20, 2023, the Court issued an order preliminarily approving the Settlement, approving the Plan of Notice, and setting a date of September 14, 2023, for the Final Fairness Hearing. Doc. 27 at 7 ("Preliminary Approval Order"). The Court also approved the Notices of Proposed Settlement of Class Action ("Class Notices"), for mailing and publication. *Id.* at 6–7. The Court ordered that Notice be given to Class Members in accordance with the Plan of Notice as outlined in the Settlement Agreement and found that the Notices being provided "are the best notice practicable under the circumstances, constitute due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." *Id.* at 5, ¶ 8. Since preliminary approval, Notice was mailed, by first-class mail, as ordered by the Court, to thousands of potential members of the Settlement Class between July 20, 2023, and the present. **Ex. 5**, Declaration of Jennifer Keough Regarding Notice of Settlement ("Keough Decl.") at 2–3, ¶¶ 6–8. Notice was also published on the settlement website and, on July 28, 2023, in *The Oklahoman* and *The Tulsa World*, as directed in the Preliminary Approval Order. *Id.* at 3, ¶¶ 9–10.

The facts regarding certification haven't changed since the Court entered the Preliminary Approval Order—class certification remains proper. A general plan of allocation was described in the Notices, along with the other material terms of the SA. *See* **Ex. 5**, Keough Decl. at Exs. A, C; SA, Doc. 26-1. Consistent with the Notices and the Plan of Allocation, the preliminary allocation shows the proposed distributions to each member of the Settlement Class and an amount of distribution. The Initial Plan of Allocation—prepared by Plaintiff's'

expert, Barbara Ley—assumes the Court approves the requests for reimbursement of Litigation Expenses and Administration, Notice, and Distribution Costs, and the requests for Plaintiffs' Attorneys' Fees and Case Contribution Awards. The SA contemplates that Class Representatives will move the Court for a Distribution Order based upon a Final Plan of Allocation within sixty (60) days after the Effective Date, with the benefit of the Court's ruling on those requests. *See* Doc. 26-1 at 23, ¶ 6.4.

Following mailing of the Notices and publication, Members of the Settlement Class have thirty-five (35) days to request exclusion or file an objection. Only ten requests for exclusion and zero objections have been received as of the time of this filing.[3] *See* **Ex. 5**, Keough Decl. at ¶¶ 14–17. The small number of opt-outs from and no objections to the Settlement thus far support the conclusion that the Settlement and Plan of Allocation are fair, adequate, reasonable, and in the best interests of the Settlement Class such that final approval should be granted.

## ARGUMENT & AUTHORITY

The Court should grant final approval of the Settlement. The procedure for reviewing a proposed class action settlement is a well-established two-step process. First, the Court conducts a preliminary analysis to determine if the settlement should be preliminarily approved such that the class should be notified of the pendency of a proposed settlement. Manual for Complex Litigation § 21.632 (4th ed. 2004). Second, the class is notified and provided an opportunity to be heard at a fairness hearing before the settlement is finally approved. Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25, at 38 (4th ed. 2002). The Court already carried out this first step with its Preliminary Approval Order, and notice was effectuated pursuant to the terms of the SA and in the form and manner approved by the

---

[3] Because this Motion is due before the exclusion and objection deadline (August 24, 2023), Class Representatives will submit a supplement detailing the requests for exclusion and objections, if any, received and indicate those that were properly submitted.

Court. *See* **Ex. 5**, Keough Decl. at 2–4, ¶¶ 4–13. As to the final step, courts in the Tenth Circuit consider four factors when deciding whether to finally approve a class action settlement:

    a. Whether the proposed settlement was fairly and honestly negotiated;

    b. Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

    c. Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

    d. Whether, in the parties' judgment, the settlement is fair and reasonable.

*See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002); *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984); *see also* Fed. R. Civ. P. 23(e)(2). Each factor supports final approval of the Settlement here.

**1.    The Court Properly Certified the Settlement Class for Settlement Purposes and Should Confirm this Finding by Finally Certifying the Settlement Class Under Rule 23**

Before addressing the four factors, the Court must find class certification remains appropriate for settlement purposes. The Court already certified the following Settlement Class:

> All non-excluded persons or entities who: (1) received Late Payments from Defendant (or Defendant's designee) for oil-and-gas proceeds from Oklahoma wells; or whose proceeds were escheated to a government entity by Defendant; or whose proceeds from Oklahoma wells were held in suspense by Defendant on or before March 10, 2023; and (2) who have not already been paid statutory interest on the Late Payments or on the amounts held in suspense by Defendant on or before March 10, 2023. A "Late Payment" for purposes of this class definition means payment of proceeds from the sale of oil or gas production from and an oil-and-gas well after the statutory periods identified in Okla. Stat. tit. 52, § 570.10(B)(1) (i.e., commencing not later than six (6) months after the date of first sale, and thereafter not later than the last day of the second succeeding month after the end of the month within which such production is sold). Late Payments do not include: (a) payments of proceeds to an owner under Okla. Stat. tit. 52, § 570.10(B)(3) (minimum pay); (b) prior period adjustments; or (c) pass-through payments.
>
> Excluded from the Class are: (1) Defendant, its affiliates, predecessors, and employees, officers, and directors; (2) agencies, departments, or instrumentalities of the United States of America or the State of Oklahoma; and (3) any Indian tribe as defined at 30 U.S.C. § 1702(4) or Indian allottee as defined at 30 U.S.C. § 1702(2).

Doc. 27 at 2–3, ¶ 3. Class certification remains proper under Rule 23(a) and (b)(3) for settlement purposes for the reasons set forth in the Preliminary Approval Motion (*see* Doc. 26). And Defendant consents to certification of the Settlement Class for the purpose of settlement.

The prerequisites for class certification under Rule 23(a) and (b)(3) are satisfied. First, Rule 23(a)(1)'s numerosity requirement is satisfied because the Settlement Class consists of tens of thousands of owners, whose joinder would be impracticable. **Ex. 5**, Keough Decl. at 2, ¶ 4; *see also Trevizo v. Adams*, 455 F.3d 1155, 1161–62 (10th Cir. 2006). Second, Rule 23(a)(2)'s commonality requirement is met because "many questions of law and fact exist that could be answered uniformly for the Settlement Class using common evidence." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016); *see also Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 914 (10th Cir. 2018) ("A finding of commonality requires only a single question of law or fact common to the entire class" (internal citations omitted)). Each of these common issues stems from a common body of law—the statutory law of the State of Oklahoma. The real property interests at issue are property located in the State of Oklahoma, and the payments at issue are governed by Oklahoma substantive law. Thus, any choice of law analysis would result in the application of Oklahoma law to the legal claims and, as such, there are no other states' laws implicated by this action, nor any other choice of law issues that could affect the Court's commonality analysis here. *See id.* Third, Rule 23(a)(3)'s typicality requirement is satisfied because Defendant treated all owners the same for purposes of proceeds payments, the same legal theories and fact issues underlie each Class Member's claims, and all Class Members suffered the same type of injury arising out of the same facts that can be proven by the same, common evidence. *DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198-99 (10th Cir. 2010). Finally, Rule 23(a)(4)'s adequacy of representation requirement is satisfied because there are no conflicts—minor or otherwise—between Class Representatives and the other Class Members. **Ex. 3**, Class Reps. Decl.; *see Tennille v. Western Union Co.*, 785 F.3d 422, 430 (10th Cir. 2015) ("Only a conflict that goes to the very subject matter of the litigation will

defeat a party's claim of representative status.") (internal citation omitted). Class Representatives and Class Counsel have prosecuted the Litigation vigorously and Class Counsel is unquestionably qualified to represent the Class here. *See* **Ex. 4**, Joint Counsel Decl. at 1–5, ¶¶ 1–18.

Additionally, Rule 23(b)(3)'s predominance and superiority requirements are satisfied here. *Tyson Foods*, 136 S. Ct. at 1045; *Menocal*, 882 F.3d 905, 914–15 ("[T]he predominance prong asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues" (citations omitted)); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1255 (10th Cir. 2014); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014). The predominance requirement is met because the substantive claims are all common (Oklahoma law under Oklahoma choice-of-law principles) as are the aggregation-enabling issues of fact (chiefly, Defendant's common course of late payments without interest to Class Members). The common questions under the shared law predominate over and are more important than any potential individual issues that theoretically could arise in the Litigation. And the superiority requirement is satisfied because resolving the Litigation through the classwide Settlement is far superior to any other method for fairly and efficiently adjudicating these claims.

The Court properly certified the Settlement Class and, because Class Representatives have proven that each of the requirements for certification under Rule 23(a) and (b)(3) remain satisfied, this finding should be confirmed with the final certification of the Settlement Class under Rule 23.

## 2.    The Court Should Grant Final Approval of the Settlement

The Court should finally approve the Settlement as fair and reasonable. The Court has broad discretion in deciding whether to grant approval of a class action settlement. *Jones*, 741 F.2d at 324. "As a general policy matter, federal courts favor settlement, especially in complex and large-scale disputes, so as to encourage compromise and conserve judicial and private

resources." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."). As demonstrated below, each of the four factors identified by the Tenth Circuit weighs in favor of final approval.

### A. The Settlement is the product of extensive arm's-length negotiations between experienced counsel.

The fact that the Settlement was fairly and honestly negotiated by qualified, experienced counsel supports final approval. *See Reed v. GM Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid."). The fairness of the negotiation process is to be examined with reference to the experience of counsel, the vigor with which the case was prosecuted, and any coercion or collusion that may have affected the negotiations.

Here, the Settlement is the product of extensive arm's-length negotiations between the Parties' experienced counsel at mediation presided over by Judge (former) Layn R. Phillips. *See* **Ex. 4**, Joint Counsel Decl. at 4–5, ¶¶ 14–16. The use of a formal settlement process supports the conclusion that the Settlement was fairly and honestly negotiated. *See Ashley v. Reg'l Transp. Dist.,* No. 05-CV-01567-WYD-BNB, 2008 WL 384579, at *6 (D. Colo. Feb. 11, 2008) (finding settlement fairly and honestly negotiated where the parties engaged in formal settlement mediation conference and negotiations over four months). And the assistance of an experienced mediator "in the settlement negotiations strongly supports a finding that they were conducted at arm's-length and without collusion." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 576 (S.D.N.Y. 2008). Here the parties engaged an experienced mediator, himself a former federal district court judge, whose involvement moved them closer to settlement.

Additionally, Class Counsel has unique experience with oil-and-gas royalty underpayment and late payment class actions. Bradford & Wilson PLLC regularly represents plaintiffs in oil-and-gas class actions, as well as other complex commercial and consumer class action

7

litigation, and have obtained settlements in numerous underpayment or late payment class actions in Oklahoma state and federal courts.[4] Class Counsel are experienced and qualified counsel and represented the Settlement Class honestly and fairly during settlement negotiations. *See* **Ex. 4**, Joint Counsel Decl. at 1–5, ¶¶ 1–18.

Class Counsel's experience positioned them well to comprehensively examine the massive amount of information and data produced in the Litigation, enabling the Parties to make informed decisions about the strengths and weaknesses of their respective cases. *See, e.g., Id.* at 3–5, ¶¶ 6–18; *Childs v. Unified Life Ins. Co.*, No. 10-CV-23-PJC, 2011 WL 6016486, at *12 (N.D. Okla. Dec. 2, 2011). Further, Class Representatives were involved in the negotiations and believe the settlement process resulted in an excellent recovery for the Settlement Class. *See* **Ex. 3**, Class Reps. Decl. Class Representatives expended time and resources prosecuting the Litigation, including communicating with Class Counsel, providing documents and information, and participating in the negotiations that led to the Settlement. *Id.* The Parties and their lawyers were well prepared for the serious and intelligent negotiations that ultimately led to the Settlement.

---

[4] *See, e.g.*, *Cecil v. BP Am. Prod. Co.*, No. 16-CV-410-KEW (E.D. Okla. 2018); *Harris v. Chevron U.S.A., Inc.*, No.19-CV-355-SPS (E.D. Okla. 2019); *McNeill v. Citation Oil & Gas Corp.*, No. 17-CV-121-RAW (E.D. Okla. 2019); *Bollenbach v. Okla. Energy Acquisitions LP*, No. 17-CV-134-HE (W.D. Okla. 2018); *McKnight Realty Co. v. Bravo Arkoma*, No. 17-CV-308-KEW (E.D. Okla. 2018); *Speed v. JMA Energy Co., LLC*, No. CJ-2016-59 (Okla. Dist. Ct. Hughes Cty. 2019); *Henry Price Tr. v. Plains Mktg.*, No. 19-CV-390-KEW (E.D. Okla. 2021); *Hay Creek Royalties, LLC v. Roan Res. LLC*, No. 19-CV-177-CVE-JFJ (N.D. Okla. 2021); *Johnston v. Camino Nat. Res., LLC*, No. 19-CV-2742-CMA-SKC (D. Colo. 2021); *Swafford v. Ovintiv Inc., et al.*, No. 21-CV-210-SPS (E.D. Okla.); *Pauper Petroleum, LLC v. Kaiser-Francis Oil Co.*, No. 19-CV-514-JFH-JFJ (N.D. Okla.); *McKnight Realty Co v. Bravo Arkoma, LLC*, No. 20-CV-428-KEW (E.D. Okla.); *Rounds, et al. v. FourPoint Energy, LLC*, No. 20-CV-52-P (W.D. Okla.); *Hay Creek Royalties, LLC v. Mewbourne Oil Co.*, No. 20-CV-1199-F (W.D. Okla.); *Wake Energy, LLC v. EOG Res., Inc.*, No. 20-CV-183-ABJ (D. Wyo.); *Joanna Harris Deitrich Tr. A. v. Enerfin Res. I Ltd. P'ship, et al.*, No. 20-CV-084-KEW (E.D. Okla.); *Cowan v. Devon Energy Corp., et al.*, No. 22-CV-220-JAR (E.D. Okla.); *Kunneman Props. LLC, et al. v. Marathon Oil Co.*, No. 22-CV-274-KEW (E.D. Okla.); *Hoog v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-463 (E.D. Okla.); *Lee v. PetroQuest Energy, L.L.C., et al.*, No. 16-CV-516-KEW (E.D. Okla.); *Underwood v. NGL Energy Partners LP*, No. 21-CV-135-CVE-SH (N.D. Okla.).

These facts demonstrate the Settlement resulted from serious, informed, and non-collusive negotiations between skilled and dedicated attorneys. The first factor supports final approval.

### B. Serious questions of law and fact exist, placing the ultimate outcome in doubt.

The existence of serious questions of law and fact place the ultimate outcome of this Litigation in doubt, and such doubt "tips the balance in favor of settlement because settlement creates a certainty of some recovery and eliminates doubt, meaning the possibility of no recovery after long and expensive litigation." *McNeely v. Nat'l Mobile Health Care, LLC*, No. 07-CV-933-M, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008) (internal citations omitted).

There are numerous factual and legal issues about which the Parties disagree—issues that would ultimately be decided by a court or a jury. Despite Class Representatives' optimism regarding their chances at class certification and trial, the Parties vehemently disagree on numerous factual and legal issues, and Defendant denies any wrongdoing giving rise to liability for late payment of oil-and-gas proceeds. Settlement renders the resolution of these issues unnecessary and provides a guaranteed recovery in the face of uncertainty. Because this Litigation presents serious issues of law and fact that place the ultimate outcome in doubt, the second factor supports final approval of the Settlement.

### C. The value of immediate recovery outweighs the mere possibility of future relief after long and expensive litigation.

The complexity, uncertainty, expense, and likely duration of further litigation and appeals also support approval of the proposed Settlement. The immediate value of the $7 million cash recovery alone outweighs the uncertainty, additional expense, and likely duration of further litigation. The Settlement Class is "better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *See McNeely*, 2008 WL 4816510, at *13. The Settlement represents a meaningful recovery for the Settlement Class without the risk or additional expense

9

of further litigation. These immediate benefits must be compared to the risk that the Settlement Class may recover nothing after class certification, summary judgment, trial, and likely appeals, possibly years into the future. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261 (D. Kan. 2006). Furthermore, the Settlement also provides Future Benefits to the Settlement Class, which are estimated to have a value of $1.6 million, for a Gross Settlement Value of $8.6 million. *See* **Ex. 6**, Ley Decl. at 3, ¶ 8.

While Class Counsel is confident in their ability to prove the claims asserted, they also recognize liability is far from certain and many potential obstacles to obtaining a final, favorable verdict exist. Even if Class Representatives were able to establish liability at trial, Defendant would have vigorously argued the Settlement Class damages are far less than the Settlement and raised a number of defenses to further whittle down the damages. Through the Settlement, the Settlement Class is guaranteed a cash payment without the attendant risks of further litigation.

Class Counsel is intimately familiar with the risks of proceeding with the Litigation because they have extensive experience prosecuting oil-and-gas class actions. *See* **Ex. 4**, Joint Counsel Decl. at 1–3, ¶¶ 2–3. Class Counsel believes the value of the Settlement outweighs the risks of proceeding further with the Litigation. *Id.* at 9, ¶ 37. When the risks and uncertainties of continuing the Litigation are compared to the immediate benefits of the Settlement, it is clear the Settlement is fair, reasonable, and in the best interests of the Settlement Class. The third factor supports final approval of the Settlement.

**D. The Parties agree the Settlement is fair and reasonable.**

The fact that Class Representatives and Defendant believe the Settlement is fair and reasonable supports final approval. Class Counsel and Class Representatives only agreed to settle the Litigation after considering the substantial benefits the Settlement Class will receive,

the risks and uncertainties of continued litigation, and the desirability of proceeding under the terms of the Settlement Agreement.

Class Counsel's judgment as to the fairness of the Settlement also supports final approval. "Counsels' judgment as to the fairness of the [settlement] agreement is entitled to considerable weight." *Childs*, 2011 WL 6016486, at *14 (citation omitted). Class Counsel believes the terms and conditions of the Settlement are fair, reasonable, and adequate to the Settlement Class, and the Settlement is in the Class Members' best interests. *See* **Ex. 4**, Joint Counsel Decl. at 6, ¶ 22. This last factor fully supports the Court's final approval of the Settlement. Indeed, all four factors considered by courts in the Tenth Circuit support final approval of the Settlement.

**3.     The Notice Method Used was the Best Practicable Under the Circumstances and Should be Approved**

The Court should approve the Notice given to the Settlement Class. Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Also, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). In terms of due process, a settlement notice need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager v. CenturyLink Comm'ns, LLC*, 854 F.3d 1167, 1171 (10th Cir. 2016) (citing *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). "The Supreme Court has consistently endorsed notice by first-class mail," holding "a fully descriptive notice . . . sent first-class mail to each class member, with an explanation of the right to 'opt out,' satisfies due process." *Id.* at 1173. Here, the Notice

campaign carried out by Class Counsel and the Settlement Administrator is substantially comparable to notice campaigns completed in other oil-and-gas class actions approved by district courts in Oklahoma, including this Court.

In its Preliminary Approval Order, the Court preliminarily approved the form and manner of the Notice disseminated by the Settlement Administrator, finding the Notices "are the best notice practicable under the circumstances, constitute due and sufficient notice to all persons and entities entitled to receive such notice, and fully satisfy the requirements of applicable laws, including due process and Federal Rule of Civil Procedure 23." Doc. 27 at 5, ¶ 8. The Court directed dissemination of the Notices in accordance with the Settlement Agreement and the Preliminary Approval Order. *Id.*

The Notice was mailed to tens of thousands of potential Class Members and further diligence was conducted to ascertain proper mailing addresses. **Ex. 5**, Keough Decl. at 2–3, ¶¶ 4–8. In addition, the Court-approved Notice was published on July 28, 2023, in two newspapers of local circulation, *The Oklahoman* and *The Tulsa World,* as directed in the Preliminary Approval Order. *Id.* at 3, ¶ 9. The Notice materially informed Class Members about the Litigation, the Settlement, and the facts needed to make informed decisions about their rights. Also, the Notice, along with other documents germane to the Settlement, were posted on the website created for and dedicated to this Litigation, www.dinsmore-p66.com, beginning on July 20, 2023. *Id.* at 3–4, ¶¶ 10–11. This website is maintained by the Settlement Administrator, where additional information regarding the Settlement can be found. *Id.*

In sum, the form, manner, and content of the Notice campaign were the best practicable notice, and their contents were reasonably calculated to, and did, apprise Class Members of the pendency and nature of the Settlement and affords them an opportunity to opt out or object. Therefore, the Court should grant final approval of the Notice given to the Settlement Class here.

## 4. The Initial Plan of Allocation Should Be Approved

The Court should also approve the proposed Initial Plan of Allocation, which is attached as Exhibit 2 to the Ley Declaration (**Ex. 6**). Like the Settlement itself, a plan of allocation must also be approved as fair and reasonable. *See In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d at 1262 (citing *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. at 462). Where, as here, a plan of allocation is formulated by competent and experienced class counsel, the plan need only have a reasonable, rational basis. *Id.* As a general rule, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable. *Id.*; *see also, e.g.*, Initial Plan of Allocation Order (Doc. 233), *Chieftain Royalty Company v. XTO Energy, Inc.*, No. 11-CV-00029-KEW (E.D. Okla. Mar. 27, 2018).

Class Counsel, together with Plaintiffs' expert, have formulated the Initial Plan of Allocation by which Class Members will be reimbursed proportionately relative to the extent of their injuries for late payments or suspension of oil-and-gas proceeds. Importantly, this is not a claims-made settlement, nor is it a settlement where a Class Member must take further action to participate. Instead, every Class Member who did not effectively opt out of the Settlement will receive a check or credit for their allocation of the Net Settlement Fund, subject to a *de minimis* threshold of $5.

Specifically, the Net Settlement Fund will be allocated to individual Class Members proportionately based on the amount of statutory interest owed on the original underlying payment that allegedly occurred outside the time periods required by the PRSA, or based on the amount of statutory interest accrued on amounts held in suspense during the Claim Period, with due regard for the production date, the date the underlying payment was made or the amount of time the proceeds have been held in suspense, the amount of the underlying payment, the time periods set forth in the PRSA, any additional statutory interest that Class Counsel believes has since accrued. Pursuant to the SA, the Initial Plan of Allocation further

assumes a reduction for Plaintiffs' Attorneys' Fees, Litigation Expenses, Administration, Notice, and Distribution Costs, and potential Case Contribution Awards, which amounts will ultimately be determined by the Court at the Final Fairness Hearing.

Class Representatives and Class Counsel, with the aid of the Settlement Administrator, will allocate the Net Settlement Fund proportionately among all Class Members. A Distribution Check for each Class Member's allocation of the Net Settlement Fund will then be mailed to each respective Class Member's last known mailing address, using the payment history data produced or will be credited to each account for Class Members in suspense. Returned or stale-dated Distribution Checks shall be reissued as necessary to effectuate delivery to the appropriate Class Members using commercially reasonable methods.

Because the proposed Initial Plan of Allocation was formulated by competent and experienced Counsel and is based on the type and extent of each Class Member's particular loss, the Court should approve it as fair, reasonable, and adequate.

## CONCLUSION

Class Representatives and Class Counsel respectfully request that the Court enter the proposed Judgment, attached as **Exhibit 1**.[5] The proposed Judgment grants: (1) final certification of the Settlement Class; (2) final approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Settlement Class; and (3) final approval of the Notice to Class Members. Class Representatives and Class Counsel also respectfully request that the Court enter the proposed Initial Plan of Allocation Order, attached as **Exhibit 2**, to govern the allocation and distribution of the Net Settlement Fund to Class Members.

---

[5] **Exhibit 1** reserves space for the Court to rule on objections, if any, and determine the approved requests for exclusion.

Respectfully Submitted,

*/s/ Reagan E. Bradford*
Reagan E. Bradford, OBA #22072
Ryan K. Wilson, OBA #33306
Bradford & Wilson PLLC
431 W. Main Street, Suite D
Oklahoma City, OK 73102
Telephone: (405) 698-2770
reagan@bradwil.com
ryan@bradwil.com

–and–

James U. White, Jr., OBA #9545
White, Coffey and Fite, P.C.
P.O. Box 54783
Oklahoma City, Oklahoma 73154
(405) 842-7545
jwhite@wcgflaw.com

**COUNSEL FOR
CLASS REPRESENTATIVES**

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to parties and attorneys who are filing users.

*/s/ Reagan E. Bradford*
Reagan E. Bradford